IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| MARY DANIELS, Individually and in her capacity as heir of the Estate of THEODORE SCHMERBER, <br><br> Plaintiff, <br><br> v. <br><br> JERAMIAH SMITH, DARON SANDERS, PATRICIA PRIOR, CARRIE JONES, D. HOUGHES, JAMES ANDERSON, ESTER LARIMORE, B.W. RODEEN, MARK DAVIS and JOHN DOES <br><br> Defendants. | § § § § § § § § § § § § § <br><br> Civil Action No. 2-07CV-227-J |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff Mary Daniels, Individually and in her capacity as heir of the Estate of Theodore Schmerber, files this lawsuit against Jeramiah Smith, Daron Sanders, Patricia Prior, Carrie Jones, D. Houghes, James Anderson, Ester Larimore, B.W. Rodeen, Mark Davis and John Does and would show the following in support thereof:

**I.
PARTIES**

1.  Plaintiff Mary Daniels is the mother of the decedent, Theodore Schmerber, and resides in Dallas, Texas.

2.  No administration of Mr. Schmerber's estate is currently pending and none is necessary. Accordingly, Ms. Daniels has standing to assert a wrongful death claim in her individual capacity and a survival claim in her capacity as heir of the Estate of Theodore Schmerber. *See*

Texas Civil Practices and Remedies Code §§ 71.002 et. seq and 71.021.

3. Defendant Jeramiah Smith was a correctional officer at the Clements Unit in Amarillo, Texas, and may be served at 9601 Spur 591, Amarillo, TX 79107. Mr. Smith has answered and entered an appearance.

4. Defendant Daron Sanders was a correctional officer at the Clements Unit in Amarillo, Texas, and may be served at 4439 Crockett Street, Amarillo, TX 79110-1835. Mr. Sanders has answered and entered an appearance.

5. Defendant James Anderson was a correctional officer at the Clements Unit in Amarillo, Texas, and may be served there at 9601 Spur 591, Amarillo, TX 79107.

6. Defendant Patricia Prior was a nurse practioner at the Clements Unit in Amarillo, Texas, and may be served there at 9601 Spur 591, Amarillo, TX 79107.

7. Defendant D. Houghes was a nurse at the Clements Unit in Amarillo, Texas, and may be served there at 9601 Spur 591, Amarillo, TX 79107.

8. Defendant Carrie Jones was a nurse at the Clements Unit in Amarillo, Texas, and may be served there at 9601 Spur 591, Amarillo, TX 79107.

9. Defendant Ester Larimore was a nurse at the Clements Unit in Amarillo, Texas, and may be served there at 9601 Spur 591, Amarillo, TX 79107.

10. Defendant B.W. Rodeen was the warden at the Clements Unit in Amarillo, Texas, and may be served there at 9601 Spur 591, Amarillo, TX 79107.

11. Defendant, Mark Davis was the individual employed by Texas Tech Health Science Center made responsible for ensuring suicide blankets were safe and not damages, and may be served at Texas Tech University Health Sciences Center, 3601 4th Street, Lubbock, Texas 79430.

12. Defendant John Does are the individuals who knew that no procedure was in place to determine whether suicide blankets were safe and not damaged. As soon as their identities are made known to Plaintiff, she will add them as parties.

## II.
## JURISDICTION AND VENUE

13. As this case is brought pursuant to 42 U.S.C. § 1983 this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3). Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

14. This Court has general personal jurisdiction over the Defendants as they reside and/or work in Amarillo, Potter County, Texas.

15. This Court has specific *in personam* jurisdiction over defendants because this cause arises out of conduct that caused the death of Theodore Schmerber while he was in the custody of the Clements Unit in Amarillo, Potter County, Texas, which is within the Northern District of Texas.

16. Venue of this cause is proper in the Northern District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Amarillo, Potter County, Texas, which is within the Northern District of Texas.

## III.
## NOTICE REQUIREMENT

17. To the extent necessary, written notice of the State Law medical malpractice claims has been given pursuant to Texas Civil Practice & Remedies Code §74.0151 to Defendants and Plaintiff agrees to provide evidence of such notice if the Judge of this Court so requires.

# IV.
# FACTUAL BACKGROUND

18.     On or around October 20, 2006, Theodore Schmerber was on a suicide watch in a Crisis Management Cell in Building 12, B Pod, at the Clements Unit.

19.     In fact, at his mental health evaluation on October 19, 2006, Mr. Schmerber told Gerald Granat, his evaluator, "I'm f***d up real bad." According to Mr. Granat, Mr. Schmerber presented as delusional with "suicidal ideation and intent, stating that he would use a razor on himself."

20.     The mental health provider further noted that Mr. Schmerber was a threat to himself and that he had stated that he wanted to die.

21.     As a consequence, Mr. Granat noted that Mr. Schmerber required emergent care and purportedly made sure the pod officer (whose identity is not yet known) maintained observation of the patient. Mental health nursing was also informed about Mr. Schmerber's suicidal tendencies.

22.     Following this evaluation, Mr. Schmerber was transferred to Crisis Management. Later that day, at approximately 2:06 p.m., Nancy Flores, R.N., also noted that Mr. Schmerber presented with emergent needs and that he was threatening to harm himself.

23.     At 4:00 p.m., Patty Wilkins, LVN, further noted that Mr. Schmerber was delusional and suicidal.

24.     The next day, October 20, 2006, Mr. Schmerber remained in danger. In fact, at approximately 8:47 a.m., Mr. Schmerber was evaluated by Charlene Forguson, R.N., for a self-inflicted laceration to his forehead.

25.     Apparently, Mr. Schmerber had been crying out for help by smashing his head on his

concrete cell.

26.     Later on October 20, 2006, Carrie Jones, MA, ACP, evaluated Mr. Schmerber. According to Ms. Jones, Mr. Schmerber was "incoherent, rambling, psychotic, and delirious." Thus, she recommended that Mr. Schmerber be transferred to Montfort, a psychiatric facility where Mr. Schmerber would be under continuous observation and where he would be safe. Despite the emergency nature of Mr. Schmerber's condition, Nurse Jones failed to ensure that Mr. Schmerber was transferred to Montfort and returned him to a crisis management cell.

27.     Nor was Nurse Jones the only clinician who knew Mr. Scchmerber needed to be hospitalized.  Patricia Prior, a psychiatric nurse practitioner, saw also Mr. Schmerber on October 20, 2006, in the afternoon.  According to Ms. Prior's notes, Mr. Schmerber mental status had been deteriorating for weeks, he was making little sense, he was evidencing a desire to harm himself, and he had decompensated.  Additionally, Nurse- Practitioner Prior, had also been told by Mr. Schmerber that he had been raped.

28.     Nurse-Practitioner Prior plainly knew that Mr. Schmerber needed to be hospitalized and specifically noted that he "needs to be sent to Montfort for stabilization."  Yet Nurse-Practitioner Prior took no steps to get Mr. Schmerber to the Montfort psychiatric hospital, failed to ensure he was under continual observation, and/or failed to protect him from his suicidal tendencies.

29.     D. Houghes, R.N., also observed Mr. Schmerber the afternoon of October 20, 2006. Nurse Houghes found Mr. Schmerber increasingly paranoid, disheveled and acknowledged that he needed to be transferred to Montfort.  Yet D. Houghes also failed to get Mr. Schmerber to Montfort or ensure that he was under continual observation.

30.     Thus Mr. Schmerber was left in a crisis management cell and not taken to the hospital.

31.     In light of Mr. Schmerber's condition, which was known to each of the Defendants, including correctional officers Sanders, Smith, Anderson and the nursing staff, Mr. Schmerber remained in danger of suicide.

32.     The correctional officers assigned to Building 12, B Pod that night were Defendants Smith, Sanders and Anderson.

33.     Pursuant to TDCJ and/or Clements Unit policy, correctional officers assigned to watch Crisis Management cells were obligated to conduct 15 minute checks of all inmates at risk of suicide and/or to ensure that such checks were completed.

34.     Upon information and belief, Defendants Smith, Sanders and Anderson had received training concerning this policy and knew that they were obligated to follow it.

35.     However, on October 20, 2006, Defendants Smith and Sanders, the individuals charged with that responsibility in Building 12, B Pod, failed to conduct these 15 minute checks. And Defendant Anderson, who was responsible for watching these roving officers, failed to report their misconduct.

36.     As a result, Mr. Schmerber was at grave risk of harm.

37.     And, without anyone to observe him in his dangerous state or protect him, Mr. Schmerber was able to commit suicide.

38.     In particular, Mr. Schmerber tore his "suicide prevention blanket," formed a noose and hung himself from a light grid in the cell.

39.     At approximately 10:30 p.m. that night Registered Nurse, Esther Larimore, and Defendant Sanders observed Mr. Schmerber hanging in his cell. Rather than help him, however

Nurse Larimore and Defendant Sanders did nothing. They did not render aid or even check his vital signs. In fact, the Office of Inspector General specifically stated that "Nurse Larimore failed to make any attempt to enter the cell and assess the condition of [Mr. Schmerber] …"

40. Accordingly, the Office of Inspector General concluded that Nurse Larimore's conduct was substandard.

41. Moreover, when Defendants Smith and Sanders discovered that Mr. Schmerber had committed suicide, rather than come forward, they tried to cover up their malfeasance by "falsifying records" to make it appear like the checks had been done.

42. Fortunately, Defendant Anderson, refused to participate in their cover-up and came forward to tell the truth.

43. As a result of their misconduct, Defendants Smith, Anderson and Sanders were found to have violated policy and their performance deemed substandard.  Each officer was also disciplined.

44. Moreover, following the investigation into Mr. Schmerber's death it was determined that no procedures existed for determining if suicide blankets were safe or damaged prior to disbursement to suicidal inmates like Theodore Schmerber.  Warden Rodeen, Mark Davis and John Does knew that no such procedures were in place and that suicidal inmates would be endangered as a consequence.

45. Upon information and belief, this resulted in Mr. Schmerber receiving a blanket that he could tear and use to commit suicide.

46. Following Mr. Schmerber's death, the suicide blankets at Clements were examined and several were found to be damaged and/or dangerous.  Upon information and belief, these

blankets were discarded.

47. Thus, upon information and belief, procedures are now in place to ensure that damaged suicide blankets are no longer provided by TDCJ or the Texas Tech Medical Department to suicidal inmates like Mr. Schmerber.

## V.
## CAUSES OF ACTION

**A.    42. U.S.C. § 1983 Claim for Deliberate Indifference to Mr. Schmerber's Right to Adequate Protection for Known Suicidal Tendencies Against Defendants Smith, Sanders, and Anderson**

48. Plaintiff incorporates by reference all of the foregoing and further allege as follows:

49. Based on their conduct, TDCJ and/or the Office of Inspector General found Smith, Sanders and Anderson to be in violation of policy and disciplined the defendants.

50. Defendants Smith, Sanders and Anderson both knew that Mr. Schmerber was on a suicide watch and required 15 minute checks on October 20, 2006.

51. Defendants Smith and Sanders deliberately failed to conduct these checks, and following Mr. Schmerber's suicide, deliberately tried to cover up their misconduct.

52. Defendant Anderson also knew that Defendants Smith and Sanders were not conducting the necessary 15 minute checks and in violation of his duties, failed to notify any superior officers to rectify the problem. Though plainly a violation of his duties, Defendant Anderson showed courage by telling the truth about what happened despite being threatened by a superior officer.

53. As a direct and proximate cause of Defendant Smith's, Defendant Sanders', and Defendant Anderson's indifference to Mr. Schmerber's clearly established right to be protected from suicidal tendencies, Mr. Schmerber was able to hang himself in a crisis management cell in

the Clements Unit and died. Defendants' callous and deliberate indifference is further evidenced by their attempts to cover up their constitutional violations. Accordingly, Defendants' Smith and Sanders are liable under 42 U.S.C. § 1983 for Plaintiff's damages.

### B. 42. U.S.C. § 1983 Deliberate Indifference Claims Against Keri Jones, Patricia Prior, D. Houghs, and Ester Larimore

54. Plaintiff incorporates by reference all of the foregoing and further allege as follows:

55. On December 20, 2006, Keri Jones, Patricia Prior and D. Houghs each evaluated Theodore Schmerber and concluded that he required emergency transfer to the Montfort Psychiatric Facility.

56. Each knew that Mr. Schmerber was suicidal, had made suicide attempts, and needed to be hospitalized. Each knew that Mr. Schmerber required constant observation and hospitalization.

57. Yet Defendants Jones, Prior, and Houghs never transferred Mr. Schmerber to Montfort, arranged for Mr. Schmerber to be transferred to Montfort, or ensured that Mr. Schmerber was safe while at the Clements Unit.

58. Then, when Nurse Larimore finally did observe Mr. Schmerber hanging, rather than render assistance as any medical provider should have done, Nurse Larimore deliberately failed to assist Mr. Schmerber. Accordingly, Nurse Larimore was disciplined for substandard performance.

59. As a direct and proximate result, Defendants knowingly left Mr. Schmerber in danger and he committed suicide. As the right to not have one's serious medical needs, including suicidal tendencies, treated with deliberate indifference was clearly established at the time of Mr. Schmerber's death. Defendants Jones, Prior, Houghes and Larimore are liable to Plaintiffs under 42. U.S.C. § 1983 for their damages.

## VI.
## STATE LAW CLAIMS

### A. Negligence Against Defendants Jones, Prior, Houghes, and Larimore

60. Plaintiff incorporates by reference all of the foregoing and further allege as follows:

61. While Nurse Larimore's conduct plainly exhibited deliberate indifference to Mr. Schmerber's serious medical needs, Plaintiff further alternatively pleads that Nurse Larimore was also guilty of negligence, which directly and proximately caused the damages and injuries sustained by Plaintiff.

62. Likewise, the conduct of Defendants Jones, Prior and Houghes in failing to get Mr. Schmerber to Montfort or to a place where he could be continually observed was negligent, and was a direct and proximate cause of the damages and injuries sustained by Plaintiff.

63. And as the above negligence stems from Defendants' failure to properly treat Mr. Schmerber and not from any negligent use of tangible property, Plaintiff's negligence claims are brought solely against Defendants and not Texas Tech Health Science Center under the Texas Tort Claims Act.

64. Such negligence by Defendants includes, but is not limited to, the following:

- Defendant Larimore failing to treat Mr. Schmerber when he was obviously in need of aid;

- Defendants Larimore, Jones, Prior and Houghes failing to ensure that Mr. Schmerber received appropriate medical care;

- Defendants Jones, Prior, Houghes failing to transfer or obtain a transfer for Mr. Schmerber to a psychiatric facility;

- Defendants Jones, Prior and Houges failing to ensure that Mr. Schmerber was placed under continual observation.

    These negligent acts and omission by Defendants were a proximate cause of the injuries

and damages to Plaintiff and were a proximate cause of the wrongful death of Theodore Schmerber.

### B. Negligence Against Defendants Rodeen, Davis, and John Does

65. Plaintiff incorporates by reference all of the foregoing and further allege as follows:

66. Upon information and belief, Defendants Rodeen, Davis and John Does were responsible for ensuring that suicide blankets provided to inmates were safe and not damaged.

67. Defendants Rodeen, Davis and John Does knew that suicidal inmates would be endangered by unsafe suicide blankets yet each failed to implement procedures to determine that such blankets were safe and/or not damaged.

68. Following Mr. Schmerber's death, the Texas Department of Criminal Justice instructed Defendant Davis to implement procedures that would ensure only safe suicide blankets would be provided to suicidal inmates.

69. Such procedures should have been in place prior to Mr. Schmerber's death and the lack of such procedures constitutes negligence of the sort that is objectively unreasonable and was a proximate cause of such death.

70. As Defendants' negligence did not involve the use of tangible property but rather the failure to adopt procedures, this claim could not have been asserted under the Texas Tort Claims Act.

### C. Negligence Against Defendants Sanders, Smith and Anderson

71. Plaintiff incorporates by reference all of the foregoing and further allege as follows:

72. Defendants Sanders and Smith had a non-discretionary duty to conduct checks of Theodore Schmerber's cell every fifteen minutes.

73. Defendants Sanders and Smith breached this duty, their breach amounted to objectively unreasonable conduct, and was a proximate cause of Mr. Schmerber's death.

74. Defendant Anderson had a non-discretionary duty to report the misconduct of Defendants Sanders and Smith. His failure to do so was objectively unreasonable and a proximate cause of Mr. Schmerber's death.

75. Finally, such claims could not have been brought under the Texas Tort Claims Act as they do not involve the use of tangible property, but stem from Defendants' unreasonable failure to conduct suicide watch checks and/or failure to report such misconduct.

## VII.
## DAMAGES

76. The actions and omissions of Defendants deprived Theodore Schmerber of his civil rights under the United States Constitution. Moreover, Defendants' acts and omissions proximately caused Mr. Schmerber's death and Plaintiff's damages. Accordingly, Plaintiff asserts claims under 42 U.S.C. § 1983 and the wrongful death and survivorship statutes.

77. More particularly, Plaintiff in her capacity as heir of the Estate of Theodore Schmerber, asserts a survival claim on behalf of the estate. The Estate has incurred damages including, but not limited to, the following:

- past physical pain and suffering;
- past mental anguish; and
- funeral and burial expenses.

78. Plaintiff, in her individual capacity, asserts a wrongful death claim. She has incurred damages including, but not limited to, the following:

- past and future mental anguish; and

- past and future loss of companionship, society, services, and affection with her son.

## VIII.
## JURY DEMAND

79.    Plaintiff respectfully demands a jury trial on all factual issues in dispute.

## IX.
## PRAYER FOR RELIEF

80.    Plaintiff hereby asks that Defendants be cited to appear and answer and that Plaintiff be awarded judgment against Defendants for:

    (a)    compensatory damages;

    (b)    attorneys' fees and costs, including but not limited to expert fees, under 42 U.S.C. §1988;

    (c)    pre-judgment interest and post-judgment interest at the highest rate allowable under the law;

    (d)    all other costs; and

    (e)    all other relief in equity or in law, to which Plaintiff may be entitled.

Respectfully submitted,

WHITEHURST, HARKNESS, OZMUN &
 BREES, P.C.
1122 Colorado Street, 24th Floor
P. O. Box 1802
Austin TX  78767
(512) 476-4346
(512) 476-4400 Facsimile

By: /s/ Jeff Edwards
    JEFF EDWARDS
    State Bar No. 24014406
    SCOTT OZMUN
    State Bar No. 15392740

    Steven H. Heisler (Bar No. 08698)
    Law Office of Steven H. Heisler
    1011  North Calvert Street
    Baltimore,  Maryland 21202
    (410) 625-4878
    (410) 659-7111 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of April, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Susan Werener
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78711